No. 16,354.

SIMON, CONSERVATOR *v.* WILLIAMS,
ADMINISTRATRIX ET AL.
(232 P. [2d] 181)

Decided May 7, 1951.

Mr. J. NELSON TRUITT, for plaintiff in error.

Messrs. IRELAND, IRELAND, STAPLETON & PRYOR, for defendants in error.

*In Department.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

A SUIT to rescind and set aside a written contract of sale, dated March 8, 1948, and a warranty deed, dated March 16, 1948, both having to do with certain described real estate. Plaintiff, as the title of the suit indicates, appears as conservator of the estate of Minnie L. Law-

son, mental incompetent, who was the seller in the contract, and grantor in the deed. Defendants Williams—now deceased—and Greene were the buyers in the contract, and defendant Messner, their "nominee," was the grantee named in the deed.

The property consisted of four lots, located at the corner of Cherokee and Quincy streets, Englewood. There was a four-room house on the property, and a smaller building with living room back, in which Mrs. Lawson, about seventy years of age and a long-time widow, conducted a grocery store and lived. There were other small buildings. The sale price was $2,200, which, minus $100 deposit, some "adjustments," and $200 withheld pending delivery of possession, was paid at the time of the execution of the deed. Possession never was delivered.

Briefly stated, plaintiff alleged that at the time of the transaction, the reasonable market value of the property involved was approximately $6,000, and that at such time Mrs. Lawson was "aged, ill and senile, and incapable of handling her own affairs, * * * [and] lacked the mental capacity to enter into said agreement, or to legally execute and acknowledge said deed." That said defendants took unconscionable advantage of Mrs. Lawson, and misled her as to the value of the property, which, due to her mental deficiencies, she believed and relied upon, and in the belief so induced, she signed the contract and executed the deed involved; that shortly thereafter she was adjudicated a mental incompetent, and plaintiff was appointed conservator of her estate. The money paid by defendants was "tendered into court." Defendants denied "each and every allegation," and in a further answer set forth their version of the occurrences as of the times thereof.

At the trial many witnesses were called and much testimony was given in behalf of plaintiff. At the close thereof, defendants moved for a directed verdict, and after argument, the court ruled: "I think there is suf-

ficient evidence to have it go to the jury, and the motion is denied." Defendants called a number of witnesses, who testified at length, and at the close of the entire case, defendants renewed their motion for a directed verdict, which also was denied. Thereupon, the court, proceeding with infinite care and evident learning, instructed the jury. Defendants challenged none of the instructions, and complain of nothing on that score. Plaintiff objected to some of the instructions that were given, but his objections are not involved in this inquiry. Neither party asked for additional instructions. The jury found the issues in favor of plaintiff.

In due time, defendants, proceeding pursuant to rules 50 and 59, R.C.P. Colo., moved the court to set aside the verdict and for judgment in accordance with their motion for a directed verdict, or, in the alternative, that a new trial be ordered. The motion was argued, and at the conclusion thereof the court ordered, that "defendants' motion for a new trial be denied; that defendants' motion to set aside the verdict and for judgment in accordance with defendants' motion for a directed verdict in favor of defendants be granted."

Subsequently, plaintiff moved that the findings and judgment thus made and entered in behalf of defendants, be vacated and set aside, failing which, as further was moved, that a new trial be granted. Those motions were denied.

We have examined the evidence at length, both as of the time when plaintiff rested, and when the case was closed. At each such pause, defendants, challenging the sufficiency of the evidence, moved for a directed verdict. The court in each instance, as already noted, denied the motion. Clearly, as our study convinces, the problem from the outset to finality was of jury cognizance. There was expert and lay testimony which indicated Mrs. Lawson's mental deficiencies, and competent witnesses testified that at the time of the sale, the property was of value greatly in excess of the con-

tract price. The showing contra pointed the fact issues, and lent emphasis to the need of determination by the fact finding arm of the court, that is to say, the jury, then duly impaneled and functioning. So far as we perceive, the court had but to await the verdict of the jury, and adjudge on the basis thereof. We think the court erred in departing from its earlier rulings.

The burden of defendants' motion, on which the court based its final order and judgment, had to do with the manner in which plaintiff testified, based whereon, as said, defendants were prevented "from having a fair trial." The record indicates that, as a witness, plaintiff was not a little difficult, and volunteered much "information." Throughout his presence on the witness stand counsel for defendants were constantly objecting and moving to strike, etc. The court, as we think, handled the matter with dignity, patience and judicial poise. Objections made by counsel for defendants generally were sustained, and motions to strike certain portions of the testimony were invariably granted. In short, the so-called "outbursts" of the witness were judicially countered throughout his examination as and when they occurred. We do not regard as sound the contention of counsel for defendants that it is "reasonable to believe that when the trial judge found that the jury had utterly ignored the instructions, he felt well justified in exercising his right * * * to direct a verdict in favor of defendants." Assuming the judge entertained the views stated by counsel, logic does not attend. In the course of the trial the judge specifically announced that, "The jury will ultimately find the incompetency or competency of Mrs. Lawson." That was of the very essence of the problem, and in instructions seemingly ample and sound—not questioned by defendants—the jury was directed to make determination in relation to Mrs. Lawson's competency. The resolution was favorable to plaintiff. How, then, may it properly be said that the jury had utterly ignored the instruc-

tions? Counsel's theory was not pertinent to the motion which was granted, and the court resolved adversely thereto when it denied the motion for a new trial.

On the whole, we are persuaded that the jury sensed the very justice of the case, and resolved in the light of the evidence. The unfortunate and unhappy elderly woman will get a reconveyance of her property, and defendants will have their money returned.

Let the judgment be reversed, and on receipt of our remand the trial court, first vacating all contrary orders, will restore the verdict to the record, and adjudge on the basis thereof.

MR. CHIEF JUSTICE JACKSON and MR. JUSTICE ALTER concur.